Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| PR ASSET PORTFOLIO 2013-1 INTERNATIONAL, LLC<br><br>Apelado<br><br>v.<br><br>ONE ALLIANCE INSURANCE CORPORATION (OAIC INSURANCE CORPORATION)<br><br>Apelante | KLAN202300636 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Utuado<br><br>Civil número: SJ2019CV10808<br><br>Sobre: Incumplimiento de Aseguradoras Huracanes Irma/María |

Panel integrado por su presidente, el juez Bermúdez Torres, el juez Adames Soto y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

# S E N T E N C I A

En San Juan, Puerto Rico, a 30 de abril de 2024.

Comparece la parte apelante, One Alliance Insurance Corporation, mediante el recurso de epígrafe y nos solicita la revocación de la *Sentencia Parcial* emitida por el Tribunal de Primera Instancia, Sala Superior de Utuado, el 2 de junio de 2023, notificada el 5 del mismo mes y año. Mediante dicho dictamen, el foro primario declaró Ha Lugar una solicitud de sentencia sumaria parcial promovida por la parte apelada, PR Asset Portfolio 2013-1 International, LLC. En su consecuencia, ordenó el pago de la porción correspondiente a la propiedad número 3964 perteneciente al *2nd Claim Submission* a favor de esta última y ordenó la continuación de los procesos de inspección, ajuste y resolución relacionados con la propiedad núm. 40553 y que pertenece al *3rd Claim Submission*.

Por los fundamentos que exponemos a continuación, se confirma el dictamen apelado. Veamos.

I

PR Asset Porfolio 2013-1 International, LLC. (PRAPI o apelado), aseguró con One Alliance Insurance Corporation (One Alliance o apelante)

un conglomerado de propiedades sitas en varias regiones de Puerto Rico. El 2 de octubre de 2017, PRAPI presentó ante su aseguradora One Alliance una reclamación por los daños y perjuicios que sufrió a consecuencia del paso del huracán María por Puerto Rico. Debido a que la reclamación de PRAPI involucraba múltiples propiedades, se acordó con One Alliance atender la reclamación en tres fases que denominaron *1st, 2nd and 3rd Claim Submissions.*

One Alliance y PRAPI, a través de sus representantes y ajustadores, realizaron las inspecciones de las propiedades incluidas en la reclamación. Luego de evaluadas las propiedades, el 17 de noviembre de 2017, PRAPI sometió a One Alliance el *1st Claim Submission* y, el 6 de enero de 2018, el *2nd Claim Submission*. En consecuencia, One Alliance le envió a PRAPI el ajuste con relación a las propiedades objeto del *1st Claim Submission* y parte de las propiedades del *2nd Claim Submission*.

Posteriormente, One Alliance le envió a PRAPI dos (2) cheques como pago del ajuste del *1st Claim Submission*. Sin embargo, el 20 de junio de 2019, One Alliance le envió una carta a PRAPI retractándose del ajuste efectuado con relación al *2nd Claim Submission*. Como justificación para el retracto, expuso que albergaba dudas sobre el interés asegurable de PRAPI en alguna de las propiedades incluidas en la reclamación y solicitó que se le devolviera una porción de lo que había pagado como parte del ajuste del *1st Claim Submission*.

Al no poder llegar a un acuerdo, el 6 de septiembre de 2019, PRAPI presentó una *Demanda* por incumplimiento de contrato de seguro, mala fe y acción declaratoria en contra de One Alliance.[1] Posteriormente, el 12 de febrero de 2020, PRAPI presentó una *Demanda Enmendada* en la que solicitó que se le ordenara a One Alliance a pagar las partidas reclamadas por esta en sus Declaraciones de Pérdida correspondiente a las propiedades del *2nd Claim Submission* ubicadas en la región judicial de Utuado, las cuales fueron ofrecidas, acordadas y aceptadas, por la cantidad

---

[1] Exhibit I del recurso, págs. 1-18.

de $409,580.40, más intereses y daños. Solicitó, además, el pago por las pérdidas reclamadas y cubiertas correspondientes a las propiedades restantes ubicadas en la región judicial de Utuado y comprendidas en el *2nd and 3rd Claim Submission*, estimadas en una suma no menor de $73,003.89, más intereses; daños estimados no menos de $1,000,000.00; la imposición de costas, gastos y honorarios de abogado por temeridad y violaciones al Código de Seguros de Puerto Rico, Ley Núm. 77 de 19 de junio de 1957, según enmendada, 26 LPRA sec. 101 *et seq.* (Código de Seguros), en una suma no menor $200,000.00; así como daños punitivos. A su vez, le solicitó al tribunal que declarara que los pagos realizados en el *1st Claim Submission* eran finales, finiquitados y/o transados, por lo cual no procedía la devolución de suma alguna a One Alliance.[2]

El 20 de marzo de 2020, One Alliance presentó su *Contestación a Demanda Enmendada.*[3] En la misma, solicitó que se declarara No Ha Lugar la *Demanda* incoada por PRAPI. De igual forma, solicitó que el tribunal declarara que PRAPI había sido temerario al hacer alegaciones de mala fe y señalamientos de actuaciones ilegales, conociendo o debiendo conocer, que el cobro de lo indebido tenía como consecuencia la obligación de la devolución de lo indebidamente cobrado. Consecuentemente, y al amparo de dicho razonamiento, adujo tener derecho a la devolución de lo indebidamente cobrado, así como a la deducción de lo pagado por error de hecho y cobrado indebidamente. Por otro lado, esbozó que la parte apelada actuó en contra de sus propios actos cuando señaló como ilegal una deducción que la misma parte sugirió por conducto de sus representantes.

Luego de varias instancias procesales, el 22 de febrero de 2021, One Alliance presentó una *Reconvención* en contra de PRAPI.[4] Mediante esta, le solicitó al tribunal: (1) declarar No Ha Lugar la *Demanda Enmendada* incoada por PRAPI; (2) declarar Ha Lugar la *Reconvención* en todos los extremos; y (3) El pago de costas y honorarios de abogado. De

---

[2] Exhibit II del recurso, págs. 19-40.
[3] Exhibit III del recurso, págs. 41-56.
[4] Exhibit IV del recurso, págs. 57-66.

igual forma, alegó que PRAPI cometió fraude bajo la norma establecida por el Código de Seguros, *supra*, al igual que ocultó información y realizó falsas representaciones sobre las propiedades en cuestión.

En respuesta, el 28 de abril de 2021, PRAPI presentó una *Réplica a Reconvención*.[5] En síntesis, esbozó que concerniente al pago emitido por One Alliance respeto al *1er Claim Submission*, se había constituido la doctrina de pago en finiquito. Asimismo, arguyó que One Alliance estaba impedido de retractarse de los ajustes y ofertas emitidas respecto al *1st and 2nd Claim Submission*, aceptadas por PRAPI. Igualmente, sostuvo que One Alliance incumplió con múltiples disposiciones del Código de Seguros, *supra*.

Culminado el descubrimiento de prueba, el 21 de junio de 2022, PRAPI presentó *Moción de Sentencia Sumaria Parcial*.[6] Solicitó que se le ordenara a One Alliance a emitir el pago sobre los ajustes del *2nd Claim Submission* y que realizara el ajuste sobre las propiedades restantes. Arguyó que One Alliance estaba impedida de retractarse de los ajustes que realizó del *1st Claim Submission* y parte del *2nd Claim Submission*, como también de los acuerdos que llegaron las partes a raíz de ellos. Por tanto, solicitó que se declarara que no tenía que devolverle a One Alliance el dinero que recibió para finalizar la reclamación de las propiedades del *1st Claim Submission*. De igual forma, planteó que la jurisprudencia establecía que One Alliance estaba obligada a emitir el pago de los $1,493,856.59, ligado a la parte de las propiedades incluidas en el *2nd Claim Submission*. Argumentó que el Código de Seguros, *supra*, y la jurisprudencia aplicable le brindaron a One Alliance el plazo de noventa (90) días para culminar el ajuste de la totalidad de las propiedades y que la aseguradora incumplió dicho término, toda vez que no había ajustado la reclamación de las propiedades en el *3rd Claim Submission* y algunas del *2nd Claim Submission*.

---

[5] Exhibit VI del recurso, págs. 80-94.
[6] Exhibit VIII del recurso, págs. 1114-1143.

Por lo antes expuesto, PRAPI solicitó al foro primario que le ordenara a One Alliance a completar el proceso de pago, y que le pagara las sumas restantes de forma inmediata. Asimismo, solicitó que se dictara Sentencia Sumaria Parcial: (1) Declarando que la anulación de las pólizas fue inválida; (2) Declarando que One Alliance no se podía retractar de los ajustes y ofertas del *1st Claim Submission* y parte del *2nd Claim Submission*; (3) Declarando que no tenía que devolverle a One Alliance suma alguna con relación a la cuantía de $2,123,198.90 del *1st Claim Submission;* (4) Ordenando a One Alliance a pagarle la suma de $9,563.48 referente al ajuste y la oferta de las propiedades del *2nd Claim Submission* sitas en Utuado; (5) Ordenando a One Alliance a culminar el ajuste de las propiedades incluidas en parte del *2nd Claim Submission* y la totalidad del *3rd Claim Submission* en un término perentorio; y (6) Ordenando a One Alliance a pagarle inmediatamente la suma que surgiera del ajuste de las propiedades incluidas en parte del *2nd Claim Submission* y la totalidad del *3rd Claim Submission*.

Por su parte, el 22 de agosto de 2022, One Alliance presentó su *Oposición a "Solicitud de Sentencia Sumaria" y "Relación de Hechos Materiales Incontrovertidos Apoyando la Solicitud de Sentencia Sumaria*".[7] En síntesis, sostuvo que existían controversias relacionadas a los elementos de intención y el patrón de conductas fraudulentas que, a su vez, repercutieron en el portafolio objeto de litigio y los acuerdos pactados entre las partes. Enfatizó como hechos controvertidos los siguientes: (1) la falta de cooperación de PRAPI al ocultarle información solicitada durante la investigación de su reclamación; (2) la falta de titularidad de PRAPI sobre las propiedades reclamadas; (3) la reserva del interés asegurable una vez PRAPI enajenó las propiedades de su patrimonio; (4) el engaño de este al sobrevalorar las propiedades; (5) la devaluación del inventario de PRAPI en mayo de 2018, fecha en que se acordó el pago de varios millones de dólares.

---

[7] Exhibit IX del recurso, págs. 1144-1194.

Evaluadas las posturas de las partes, el 2 de junio de 2023, notificada el 5 del mismo mes y año, el Tribunal de Primera Instancia emitió la *Sentencia Parcial* que nos ocupa, mediante la cual declaró Ha Lugar la solicitud de sentencia sumaria parcial presentada por PRAPI.[8] Mediante dicho dictamen, se ordenó el pago de la porción correspondiente a la propiedad núm. 3964 perteneciente al *2nd Claim Submission* y se ordenó la continuación de los procesos de inspección, ajuste y resolución de la propiedad núm. 40553 perteneciente al *3rd Claim Submission.* El foro *a quo* desglosó las siguientes determinaciones de hechos incontrovertidos:

1. PRAPI es una compañía de responsabilidad limitada doméstica con fines de lucro organizada bajo las leyes del Estado Libre Asociado de Puerto Rico.
2. OAIC Insurance Corporation es una compañía de seguros debidamente autorizada para hacer negocios en Puerto Rico.
3. Orlando Rivera Cintrón ("Sr. Rivera") es el [g]erente de [r]eclamaciones del Departamento de Reclamaciones de OAIC y es quien tiene [la] última autoridad en dicho departamento[.]
4. El Sr. Mortimer Vélez ("Sr. Vélez") es el vicepresidente del Departamento de Suscripciones (Underwriting) de OAIC.
5. El Sr. Vélez se encargaba de las tareas siguientes: (i) evaluar los documentos sometidos por el productor de un asegurado que buscaba cobertura con OAIC; (ii) fijar los términos y tarifas que la aseguradora estaba dispuesta a aceptar; (iii) establecer cuáles endosos debía incluir la póliza que solicitaba el asegurado putativo, y; (iv) supervisar o realizar el proceso de suscripción de [las] pólizas nuevas.
6. Al momento de suscribir la póliza entre las partes, el presidente de OAIC era el señor Víctor Ríos ("Sr. Ríos").
7. OAIC expidió las pólizas de seguro 75-28-000001258 y 75-28-000001259 (las Pólizas) a favor de PRAPI.
8. Ambas pólizas eran reportantes.
9. Como norma general, según el Sr. Vélez, la aseguradora evitaba expedir pólizas de este tipo, entiéndase reportantes, debido a su complejidad.
10. El Sr. Ríos intervino personalmente para formalizar el negocio de asegurar la cartera de cientos de propiedades y préstamos de PRAPI mediante la evaluación de la solicitud de PRAPI y estuvo de acuerdo en que OAIC suscribiera el riesgo relevante.
11. En particular, OAIC estuvo dispuesta a proveer la misma cobertura que había provisto la aseguradora anterior, sin embargo, con una prima menor.
12. El primer año de cobertura de las Pólizas fue efectivo desde el 1 de julio de 2017 hasta el 1 de julio de 2018.
13. Durante el periodo de cobertura, al tratarse de pólizas reportantes, ambas partes acordaron que PRAPI tenía el deber de enviarle un reporte mensual de sus propiedades aseguradas a OAIC.
14. Por error de la aseguradora, las Pólizas que emitió OAIC no contenían los endosos reportantes. Aun así, OAIC reconoció

---

[8] Exhibit XI del recurso, págs. 1437-1458.

que la intención de las partes era que las Pólizas fueran reportantes.

15. El 20 de septiembre de 2017[,] el huracán María pasó por Puerto Rico y ocasionó daños a las propiedades aseguradas de PRAPI.

16. El 2 de octubre de 2017[,] PRAPI le sometió a OAIC una notificación de pérdida.

17. El 6 de octubre de 2017, OAIC acusó recibo de la reclamación y le asignó dos números de reclamación: 101630 y 101944.

18. El Sr. Rivera, el Gerente de Reclamaciones del Departamento de Reclamaciones de OAIC, fue qui[e]n manejó la reclamación de PRAPI y tomaba todas las decisiones finales sobre ella.

19. Las reclamaciones bajo las pólizas reportantes se trabajaban de manera similar a otras reclamaciones bajo pólizas de otra índole.

20. PRAPI contrató la firma de ajustadores públicos Affiliated Adjustment Group, Ltd. ("Affiliated") para evaluar, estimar y tramitar su reclamación con OAIC.

21. OAIC contrató a Benjamín Acosta, Inc. como la firma de ajustadores independientes para evaluar, estimar, tramitar y ajustar la reclamación de PRAPI.

22. Ricardo Acosta es un ajustador independiente de reclamaciones de seguro de Benjamín Acosta, Inc., que asistió a OAIC con la reclamación de PRAPI.

23. OAIC y PRAPI, a través de sus respectivos representantes y ajustadores, acordaron llevar a cabo inspecciones conjuntas de las propiedades afectadas por el huracán María.

24. Debido a la cantidad numerosa de propiedades afectadas, OAIC y PRAPI, a través de sus respectivos representantes y ajustadores, acordaron dividir el manejo de las reclamaciones en tres fases, que designaron *1st, 2nd, y 3rd Claim Submissions*. El propósito de la división de las reclamaciones en esas tres fases designadas era facilitar el trámite de investigación, inspección, valoración y ajuste de las propiedades afectadas.

25. Las propiedades objeto de la reclamación de PRAPI ubicadas en la Región Judicial de Utuado son:
    (i)      Sr-528 Km 1.8, Zamas Sector, Veguitas Ward, Jayuya, Puerto Rico (2nd Claim Submission -505)
    (ii)      Carr 621 #227, Com. Cayuco, Bo[.] Caguana, Utuado, Puerto Rico (2nd Claim Submission – 3964)
    (iii)      #5 Ave Herrera Bo[.] Vivi Abajo, Utuado, Puerto Rico (3rd Claim Submission – 40553)

26. OAIC y PRAPI, a través de sus respectivos ajustadores, acordaron visitar las propiedades en conjunto.

27. OAIC, a través del Sr. Rivera, supervisó en todo momento el estatus de las inspecciones que estaba realizando Benjamín Acosta, Inc. respecto a la reclamación de PRAPI.

28. El 17 de noviembre de 2017[,] PRAPI sometió el *1st Claim Submission* a OAIC.

29. De las 43 propiedades que comprendía el *1st Claim Submission*, ninguna corresponde a la región judicial de Utuado.

30. El 6 de enero de 2018[,] PRAPI sometió el *2nd Claim Submission* a OAIC.

31. De las 64 propiedades que comprendía el *2nd Claim Submission*, dos corresponden a la región judicial de Utuado: la propiedad número 3964 y la propiedad número 505.

32. El 17 de abril de 2018[,] PRAPI sometió el *3rd Claim Submission* a OAIC.

33. De las 34 propiedades que comprendía el *3rd Claim Submission*, una corresponde a la región judicial de Utuado: la propiedad número 40553.

34. En abril de 2018, PRAPI y OAIC ya habían llegado a un acuerdo sobre las primeras 33 propiedades que comprendían el *1st Claim Submission*, y continuaban negociando sobre las restantes 10 propiedades.

35. El 29 de mayo de 2018[,] OAIC, a través de su ajustador, le envió a PRAPI una comunicación escrita con su ajuste de las 10 propiedades restantes del *1st Claim Submission*, y ofreció pagarle a PRAPI por las mismas.

36. Luego de aplicar los correspondientes deducibles respecto al *1st Claim Submission*, OAIC ofreció pagarle a PRAPI $2,102,222.24 bajo la Póliza de Seguro 75-28-000001259 y $20,976.66 bajo la Póliza de Seguro 75-28-000001258, cuya suma total era equivalente a $2,123,198.90.

37. El 20 de septiembre de 2018[,] PRAPI aceptó la oferta a través de su ajustador y remitió los *Proof of Loss* debidamente firmados y jurados.

38. Surge del inciso (F) del *"Sworn Statement [o]f Proof of Loss"* firmado por Anthony Santoro como representante autorizado de PRAPI lo siguiente:

    "That I understand and acknowledge that the after mentioned payment should not be construed as an admission of liability and contractual obligation on the part of OAIC Insurance Corporation, when issuing said payment does not waive the clauses and conditions of the insurance policy mentioned above and reserves the right to invoke them in the future."

39. El 26 de septiembre de 2018[,] OAIC emitió dos cheques relacionados a la oferta y ajuste de las propiedades en el *1st Claim Submission* por la cantidad total de $2,123,198.00.

40. PRAPI aceptó, endosó y depositó los cheques emitidos por OAIC.

41. Luego de aplicar los correspondientes deducibles respecto a 29 de las 64 propiedades incluidas en el *2nd Claim Submission*, OAIC ofreció pagarle a PRAPI $1,493,856.59.

42. En cuanto a la región judicial de Utuado, las partes coincidieron con que la propiedad número 3964 incluida en el *2nd Claim Submission* fue objeto de un ajuste y oferta.

43. OAIC estuvo satisfecha, en todo momento, con la inspección y el análisis que Benjamín Acosta, Inc., realizó de las propiedades en la reclamación de PRAPI.

44. El 29 de mayo de 2019[,] PRAPI remitió los *Proof of Loss* debidamente jurados y firmados para el *2nd Claim Submission*.

45. El 20 de junio de 2019[,] OAIC notificó a PRAPI por escrito que rechazaba los ajustes del *2nd Claim Submission*.

46. La razón para el rechazo se debió a que OAIC necesitaba investigar las razones por las cuales algunas de las propiedades reclamadas no habían sido incluidas en los reportes mensuales posteriores al proceso de ajuste de la reclamación ante la posibilidad de que PRAPI hubiese perdido su interés asegurable sobre estas.

47. En desacuerdo con la decisión de OAIC, el 6 de septiembre de 2019[,] PRAPI entabló un pleito por la vía judicial que, por razones de competencia, ha sido atendido en diversas regiones judiciales de Puerto Rico.

48. El 22 de marzo de 2020[,] OAIC presentó la *Contestación enmendada a la demanda enmendada* en la cual planteó en su defensa la nulidad de la póliza.

49. El 29 de enero de 2021[,] OAIC notificó formalmente a PRAPI por escrito que anuló las pólizas emitidas en beneficio de PRAPI y que no llevaría a cabo el *3rd Claim Submission*.

50. Surge del contenido de dicha misiva que OAIC alegaba que PRAPI "intencionalmente infló y exageró valores asegurables, ocultó información pertinente para la aceptación del riesgo y ocultó la inexistencia de interés asegurable en varias de las propiedades cubiertas[.]"[.]

51. Los términos y las condiciones de la póliza con respecto al fraude establecen lo siguiente:
"COMMERCIAL PROPERTY CONDITIONS
This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.
A.   CONCEALMENT, MISREPRESENTATION OR FRAUD –

Formulario CP 00 90 07 88 – a la pág. [u]no (1) de dos (2):
This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:
1.   "This Coverage Part;
2.   The Covered Property;
3.   Your interest in the Covered Property; or,
4.   A claim under this Coverage Part"

52. OAIC admitió que al atender una reclamación que surge de una póliza reportante previo a que la aseguradora emita su ajuste final, es necesario evaluar los reportes mensuales que PRAPI sometió para asegurar esas propiedades.

53. Cuando PRAPI presentó su reclamación tenía un interés asegurable sobre las propiedades reclamadas en ese momento conforme al reporte mensual de septiembre de 2017, fecha en que sufrió la pérdida.

54. OAIC admitió que el reporte mensual que PRAPI sometió para mayo de 2018, fecha en que OAIC envió el ajuste de las últimas propiedades del *1st Claim Submission* a PRAPI, identificaba varias propiedades que PRAPI había vendido, subastado o removido para esa fecha.

55. OAIC podía solicitar información relacionada con las propiedades reclamadas en cualquier momento de conformidad con el contrato de seguro y PRAPI estaba obligada a cooperar con la investigación o resolución de la reclamación.

56. OAIC admitió que, para propósitos de una reclamación de seguros de propiedad, la sobrevalorización de una propiedad no surtía efecto alguno.

57. El Sr. Vélez también admitió que no había problema ni se le imponía una penalidad si un asegurado reportaba un valor mayor al valor real de la propiedad, pues el resultado era que la aseguradora cobraría una prima más alta.

58. El Sr. Rafael Betancourt es el director de Contabilidad de OAIC.[9]

---

[9] Exhibit XI del recurso, págs. 1441-1445.

El foro primario determinó que, al cuestionarse el interés asegurable que ostentaba una persona al respecto del objeto de seguro, se debía determinar si la persona que reclamaba fue quien sufrió la pérdida económica al momento del suceso y si, en ese momento, se hubiese beneficiado de la seguridad o conservación del objeto, o si hubiese sufrido algún perjuicio o desventaja por ello. Estableció que la declaración de pérdida estuvo basada en el reporte del mes del siniestro, por lo que la aseguradora tuvo la oportunidad de inspeccionar y ajustar los daños. Por ello, determinó que ese hecho era suficiente para satisfacer el interés asegurable en la propiedad, aun cuando se hubiesen vendido posteriormente algunas propiedades aseguradas. En virtud de ello, concluyó que no estaba convencido con la alegación de fraude por omitir información relacionada con las propiedades que conformaban el inventario; sobre todo, luego de que One Alliance admitiera que, para mayo de 2018, fecha en que envió el ajuste de las últimas propiedades del *1st Claim Submission*, la aseguradora ya conocía el hecho de la venta de las propiedades que dejaron de aparecer en los reportes siguientes al siniestro.

Por otro lado, al atender la alegación sobre la alteración de los valores al sobrevalorar las propiedades reclamadas y devolverlas con posterioridad al ajuste, el Tribunal de Primera Instancia concluyó que no existía controversia en que las partes pactaron asegurar las propiedades de PRAPI mediante pólizas reportantes cuyos bienes asegurados fluctuaban en el transcurso de los reportes mensuales que se le sometían a la aseguradora. Mencionó que dichos informes debían establecer la localización de la propiedad asegurada y el valor del inventario en dicha propiedad. De igual forma, determinó que surgía de la prueba que One Alliance admitió que la sobrevalorización no surtía efecto alguno sobre la reclamación ni representaba un mayor beneficio para la persona con interés asegurable sobre las propiedades aseguradas, pues al reportar un valor mayor al real, ello resultaba en el cobro de una prima mayor a favor

de la aseguradora. En vista de ello, resolvió que la alegación de fraude por sobrevalorar las propiedades carecía de mérito.

Finalmente, sobre la tercera alegación de fraude relacionada a la violación de PRAPI de su deber de cooperar con la aseguradora, el foro primario concluyó que ninguna de las circunstancias señaladas por One Alliance justificaba la anulación de la póliza. Fundamentó su decisión en que, dentro del periodo de noventa (90) días establecido por el Código de Seguros, *supra*, One Alliance tenía la obligación de investigar adecuadamente el siniestro, incluyendo determinar si las propiedades damnificadas coincidían con aquellas descritas en las declaraciones de pérdida de la póliza y aquellas incluidas en los reportes mensuales sometidos por PRAPI sobre la lista de propiedades aseguradas al momento del siniestro. Concluyó, además, que One Alliance realizó una investigación adecuada y diligente, analizó detenidamente los hechos que ocasionaron la pérdida y examinó objetivamente la póliza y sus exclusiones junto a los informes del ajustador de reclamaciones. De esta forma, determinó que no cabía duda de que los hechos que motivaron la decisión de One Alliance de anular la póliza fueron señalados con posterioridad al ajuste, a pesar de que One Alliance contaba con los recursos para corroborar con la debida diligencia las alegadas conductas fraudulentas que presuntamente observó de PRAPI.

En desacuerdo, el 20 de junio de 2023, One Alliance presentó una *Reconsideración*,[10] la cual fue declarada No Ha Lugar por el foro primario al día siguiente.[11]

Inconforme con dicha determinación, el 21 de julio de 2023, la parte apelante acudió ante nos mediante el recurso de epígrafe y realizó los siguientes señalamientos de error:

> PRIMER ERROR: ERRÓ EL TPI AL DECLARAR *HA LUGAR* LA SENTENCIA SUMARIA FUNDAMENTANDO SU DECISIÓN EN QUE [,] A PESAR DE QUE "*UN ELEMENTO DEL FRAUDE ES LA INTENCIÓN DE DEFRAUDAR... ES PRECISO*

---

[10] Exhibit XII del recurso, págs. 1459-1465.
[11] Exhibit XIII del recurso, pág. 1496.

*DISTINGUIR ESTE CASO DE OTROS...*"[,] ADJUDICANDO SOBRE LA CONTROVERSIA RELACIONADA AL FRAUDE:

    1.1 A PESAR DE QUE ONE ALLIANCE NO HA TENIDO SU DÍA EN CORTE PARA PRESENTAR TODA SU PRUEBA DOCUMENTAL Y TESTIFICAL EN RELACIÓN CON LA INEQUÍVOCA INTENCIÓN DE PRAPI DE DEFRAUDAR A LA ASEGURADORA.

SEGUNDO ERROR: ERRÓ EL TPI AL DECLARAR *HA LUGAR* LA SENTENCIA SUMARIA ADJUDICANDO SOBRE LA NULIDAD DE PÓLIZAS Y EL FRAUDE:

    2.1 A PESAR DE QUE SURGEN DE LOS AUTOS QUE EXISTEN HECHOS MATERIALES QUE ESTÁN EN CONTROVERSIA QUE IMPIDEN DISPONER EL RECURSO POR LA VÍA SUMARIA, SEGÚN ALEGADOS EN LA RECONVENCIÓN, QUE AÚN ESTÁ PENDIENTE DE ADJUDICACIÓN.

En cumplimiento con nuestra *Resolución* del 9 de agosto de 2023, y luego de una prórroga a esos efectos, el 2 de octubre de 2023, la parte apelada compareció mediante *Alegato de la Parte Apelada*.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

**A**

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, es un vehículo para asegurar la solución justa, ráp ida y económica de un caso. *Serrano Picón v. Multinational Life Ins.*, 2023 TSPR 118, 212 DPR 981 (2023); *Oriental Bank v. Caballero García*, 2023 TSPR 103, 212 DPR 671 (2023); *González Meléndez v. Mun. San Juan et al.*, 2023 TSPR 95, 212 DPR 601(2023); *Acevedo y otros v. Depto. Hacienda y otros*, 2023 TSPR 80, 212 DPR 335 (2023); *Universal Ins. y otro v. ELA y otros*, 211 DPR 455 (2023). Dicho mecanismo permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no exista controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964 (2022). Este mecanismo lo puede utilizar la parte reclamante o aquella parte que se defiende de una reclamación. 32 LPRA Ap. V, R. 36.1 y 36.2.

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón,* 204 DPR 20, 42 (2020). Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Segarra Rivera v. Int'l. Shipping et al.*, supra. Como se sabe, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. *Íd.*

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3; *Oriental Bank v. Caballero García*, supra, pág. 8; *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019). Si la parte promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 111 (2015).

Por otro lado, "la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación". *León Torres v. Rivera Lebrón,* supra,

pág. 43. Por el contrario, quien se opone a que se declare con lugar esta solicitud viene obligado a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho la parte promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. *Íd.*

Por ello, en la oposición a una solicitud de sentencia sumaria, la parte promovida debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. *León Torres v. Rivera Lebrón,* supra. Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3. *Íd.* En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *Íd.* De lo anterior, se puede colegir que, ante el incumplimiento de las partes con las formalidades de la Regla 36 de Procedimiento Civil de 2009, *supra*, la consideración de sus posiciones descansa en la sana discreción del Tribunal.

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por la parte promovente. *E.L.A. v. Cole*, 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues solo procede si bajo ningún supuesto de hechos prevalece la parte promovida. *Íd.*, pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador o juzgadora debe actuar guiado por la prudencia y ser consciente, en todo momento, que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón,* supra*, pág. 44.

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Acevedo y otros v. Depto. Hacienda y otros*, supra; *Segarra Rivera v. Int'l. Shipping et al.*, supra. Un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Oriental Bank v. Caballero García*, supra, pág. 7; *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012); *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). Ahora bien, el Foro de última instancia ha reiterado que cualquier duda no es suficiente para derrotar una moción de sentencia sumaria, pues debe tratarse de una incertidumbre que permita concluir que existe una controversia real sobre hechos relevantes y pertinentes. *Íd.* Además, existen casos que no se deben resolver mediante sentencia sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens*, 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o casos que involucren cuestiones de interés público". *Íd.* No obstante, la sentencia sumaria procederá si atiende cuestiones de derecho. *Universal Ins. y otro v. ELA y otros*, supra.

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas*, supra, págs. 118-119. Sobre ese particular, nuestro más Alto Foro señaló que:

> [E]l Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están

en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

Conforme a lo anterior, nos encontramos en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia de una sentencia sumaria. *Birriel Colón v. Econo y otros*, 2023 TSPR 120, 213 DPR ___ (2023); *Serrano Picón v. Multinational Life Ins.*, supra; *González Meléndez v. Mun. San Juan et al.*, supra; *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019). Por ello, nuestra revisión es una *de novo* y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, *supra*, así como de su jurisprudencia interpretativa. *González Meléndez v. Mun. San Juan et al.*, supra. A tenor con la referida normativa, dicha revisión se realizará de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria en el foro de origen y realizando todas las inferencias permisibles a su favor. *Birriel Colón v. Econo y otros*, supra; *Meléndez González et al. v. M. Cuebas*, supra, pág. 118. De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente el derecho. *González Meléndez v. Mun. San Juan et al.*, supra.

**B**

El negocio de seguros se encuentra revestido de un alto interés público por el rol vital que juega esa industria en la sociedad y economía. *OCS v. Universal*, 187 DPR 164, 174 (2012). El contrato de seguro es aquel mediante el cual una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable de producirse un suceso incierto previsto en el mismo. 26 LPRA sec. 102. Al suscribir un contrato de seguros, los aseguradores "asumen la carga económica de los riesgos transferidos a cambio de una prima". *Coop. Ahorro y Créd. Oriental v. S.L.G.*, 158 DPR 714, 721 (2003). Ante ello, es evidente que el propósito de todo contrato de seguro es la indemnización y la protección en caso de

producirse el suceso incierto previsto en este. *S.L.G. Francis-Acevedo v. SIMED*, 176 DPR 372, 384 (2009).

El Código de Seguros de Puerto Rico, Ley Núm. 77 de 19 de junio de 1957, según enmendada, 26 LPRA sec. 101 *et seq.* (Código de Seguros), regula las prácticas comerciales de esta industria. Uno de los renglones mayormente regulado por dicho estatuto es el perteneciente a las prácticas desleales y fraude en el negocio de los seguros. 26 LPRA secs. 2701-2740; *Carpets & Rugs v. Tropical Reps,* 175 DPR 615, 632 (2009); *Comisionado de Seguros v. PRIA*, 168 DPR 659, 671 (2006). Como parte de las prácticas desleales detalladas allí, se encuentran aquellas relacionadas al ajuste de reclamaciones. *Carpets & Rugs Tropical Reps,* supra, pág. 632. El Artículo 27.161 del Código de Seguros, 26 LPRA sec. 2716a, regula el ajuste de las reclamaciones e incluye una larga lista de actos que se considerarán como prácticas desleales.

A su vez, el Código de Seguros, *supra*, establece los términos que tienen las aseguradoras para completar el ajuste de reclamaciones presentadas por sus aseguradas. En específico, el *Artículo* 27.162 del Código de Seguros, 26 LPRA sec. 2716b, dispone lo siguiente:

> (1) La investigación, ajuste y resolución de cualquier reclamación se hará en el período razonablemente más corto dentro de noventa (90) días después de haberse sometido al asegurador la reclamación.
>
> (2) En el caso de que un asegurador no pueda resolver una reclamación en el término establecido en el inciso (1) de esta sección, deberá mantener en sus expedientes los documentos que acrediten la existencia de justa causa para exceder el término anteriormente dispuesto.
>
> (3) El Comisionado en cualquier momento podrá ordenar la resolución inmediata de cualquier reclamación si considera que se está dilatando o retrasando indebida e injustificadamente la resolución de la misma.
>
> En *Com. Seguros P.R. v. Gen. Accident Ins. Co.*, 132 DPR 543, 551

(1993), el Tribunal Supremo de Puerto Rico estableció que el término máximo de noventa (90) días para la resolución de una reclamación se contará a partir del momento en que el asegurado presenta la reclamación.

De igual forma, nuestro ordenamiento jurídico ha reconocido que una reclamación se entiende resuelta una vez la aseguradora notifica a la persona asegurada el ajuste final de la reclamación presentada. Sin embargo, la aseguradora cumple con su obligación cuando la oferta es razonable. Conforme a ello, de existir controversia sobre el ajuste, el Comisionado de Seguros tendrá que decidir. *Carpets & Rugs Tropical Reps*, supra, pág. 632.

Al momento de evaluar una reclamación, es obligación de la aseguradora realizar una investigación diligente que incluya: (1) determinar si el evento damnificador ocurrió durante la vigencia de la póliza; (2) determinar si la persona asegurada reclamante tenía un interés asegurable; (3) determinar si la propiedad damnificada es aquella descrita en las declaraciones; (4) confirmar si las perdidas reclamadas no están sujetas a exclusiones de riesgos, e (5) investigar si el daño fue causado por negligencia de un tercero, de modo tal que la aseguradora pueda subrogarse en los derechos de resarcimiento de su asegurada. Véase, R. Cruz, *Derecho de Seguros*, San Juan, Pubs. JTS, 1999, Sec. 20.3, págs. 237-238. No es hasta que la aseguradora evalúa todos estos aspectos, que se encuentra en posición para resolver una reclamación de forma final.

Se ha reconocido que una reclamación puede ser resuelta de forma definitiva de las siguientes maneras: (1) emitiendo el pago total de la reclamación; (2) expresando la denegatoria escrita y fundamentada de la reclamación; o (3) mediante la notificación de una oferta razonable que no es otra cosa que el estimado de los daños que hace la aseguradora. *Carpets & Rugs Tropical Reps*, supra, pág. 634. Si la aseguradora elige cumplir con su obligación mediante el envío de una oferta razonable, la oferta constituye el estimado de la aseguradora sobre los daños sufridos por la persona asegurada. Por tanto, la aseguradora está notificando que, después de una investigación diligente, un análisis de los hechos que dieron lugar a la pérdida, un examen de la póliza y sus exclusiones, así como un estudio realizado por la persona ajustadora de reclamaciones de

la aseguradora, concluyó que la póliza cubre los daños reclamados en las cantidades incluidas en la comunicación. *Íd.*, pág. 635.

Cónsono con lo anterior, la aseguradora no puede retractarse del ajuste que la ley la obligó a enviar a su asegurada. Únicamente se permiten excepciones, cuando la persona reclamante actúa fraudulentamente o existen circunstancias extraordinarias que la aseguradora no pudo descubrir, a pesar de que realizó una investigación diligente.

En cuanto al fraude, es norma reiterada que no se presume. *Pardo v. Sucn. Stella*, 145 DPR 816, 825 (1998). El mismo debe ser demostrado por la parte promovente con certeza razonable, esto es, con preponderancia de la evidencia que satisfaga la conciencia del juzgador. *González v. Quintana*, 145 DPR 463 (1998). En virtud de ello, nuestro más Alto Foro razonó que permitirle a la aseguradora retractarse del ajuste sin que estén presentes las excepciones, circunvalaría el término en el que está obligado a investigar y resolver la reclamación, causando incertidumbre en las personas aseguradas. Siendo así, la aseguradora podría cumplir artificialmente con el término impuesto en el Código de Seguros, *supra,* para evitar sanciones y poder retractarse de los daños que estimó originalmente. Además, se le impondría la carga a la persona asegurada de litigar partidas que la aseguradora encontró procedentes inicialmente. *Íd.*, págs. 635-636.

Esbozada la norma jurídica, procedemos a aplicarla al recurso ante nos.

**III**

En su primer señalamiento de error, One Alliance esgrimió que el Tribunal de Primera Instancia erró al declarar Ha Lugar la solicitud de sentencia sumaria de la parte apelada fundamentando su decisión en que, a pesar de que "un elemento del fraude es la intención de defraudar…[,] es preciso distinguir este caso de otros…", adjudicando así sobre la controversia relacionada a fraude. No le asiste la razón en este señalamiento de error. Veamos.

Es norma reiterada que, bajo los contratos de seguros, las ofertas emitidas por la compañía aseguradora son una manera de resolver de forma definitiva una reclamación. Igualmente, se ha establecido que una aseguradora no puede retractarse del ajuste que informó a la persona asegurada. En el caso de autos, la reclamación de PRAPI fue dividida en tres etapas: *1st, 2nd and 3rd Claim Submission*. No hay controversia en que, sobre el *1st and 2nd Claim Submission*, surgió una oferta por parte de One Alliance que fue aceptada por PRAPI. En particular, One Alliance notificó que, después de una investigación diligente, la póliza en cuestión cubría los daños reclamados por PRAPI por una cantidad cierta, por la cual emitió la oferta que ahora pretende no pagar alegando fraude. Luego de evaluar exhaustivamente el expediente ante nos, colegimos que la cantidad ofrecida en dicho documento constituye una deuda líquida, vencida y exigible. Por tanto, One Alliance no podía negarse a emitir el pago del *1st and 2nd Claim Submission* de las propiedades ajustadas una vez fue aceptado por PRAPI.

Por otro lado, si bien es cierto que One Alliance presentó una *Reconvención* alegando fraude por parte de PRAPI, el momento para levantar cualquier defensa al respecto, era cuando se realizó la investigación de la reclamación y el ajuste, no posteriormente. Nuestro ordenamiento jurídico ha enfatizado en múltiples instancias que, al emitir una oferta, la aseguradora debió haber sido diligente y haber realizado una investigación sobre la reclamación incoada. Por otro lado, One Alliance no demostró la existencia de circunstancias extraordinarias que le fueran imposibles descubrir al momento del ajuste.

Es meritorio enfatizar que la decisión del foro primario se fundamentó esencialmente en: (1) la controversia sobre la falta de interés asegurable por la omisión de las propiedades reclamadas en los reportes mensuales; (2) sobre la alteración de los valores al sobrevalorar las propiedades reclamadas y devaluarlas con posteridad al ajuste; y (3) el planteamiento sobre la violación del deber de PRAPI de cooperar con la aseguradora. Las tres alegaciones hechas por One Alliance imputaban fraude por parte de PRAPI. No obstante, no fueron fundamentadas ni avaladas con prueba durante el proceso judicial.

Ante ello, concurrimos con la determinación del foro de instancia en declarar Ha Lugar la solicitud de sentencia sumaria presentada por PRAPI.

Por otro lado, en su segundo señalamiento de error, la parte apelante plantea que el foro apelado incidió al declarar Ha Lugar la moción de sentencia sumaria adjudicando sobre la nulidad de las pólizas y el fraude; esto, "a pesar de que surge de los autos que existen hechos materiales que están en controversia que impiden disponer el recurso por la vía sumaria, según alegados en la reconvención, que aún están pendiente[s] de adjudicación". No le asiste la razón.

La presentación de una reconvención no exime a la parte demandada de tener que presentar una oposición a la solicitud de sentencia sumaria promovida por la parte contraria, mediante la cual contrarrestara puntualmente las razones por las cuales el pleito no podía resolverse por la vía sumaria.

Es un principio básico del derecho procesal que, para derrotar una solicitud de sentencia sumaria, la parte que se opone a la misma debe contestar los hechos presentados por la parte promovente de forma detallada y específica, con documentos que, en efecto, refuten sustancialmente los hechos. Como bien arguye la parte apelada en su alegato, la parte oponente tiene la obligación de controvertir con evidencia los hechos que entiende se encuentran en controversia. No obstante, en este caso, One Alliance no presentó ningún documento en su oposición a la solicitud de sentencia sumaria que controvirtiera la finalidad de los ajustes hechos sobre las emisiones de pago. En su escrito, se limitó a decir que los ajustes eran parciales. One Alliance tampoco presentó prueba alguna que demostrara que PRAPI incurrió en prácticas proscritas en la póliza.

En virtud de lo anterior, concluimos que los errores señalados no se cometieron.

**IV**

Por los fundamentos antes expuestos, confirmamos el dictamen apelado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones